Next case is 19-3049, United States v. Ockert May it please the court, my name is Brent Owen and I represent Mr. Terry Ockert. The district court should have suppressed evidence found in Mr. Ockert's vehicle for two reasons. First, the court improperly applied marks by adopting what amounts to a categorical approach that two momentary lane drifts were enough to have reasonable suspicion. Second, after the illegal seizure, officers were not in a lawful position to observe the evidence used to convict Mr. Ockert. If the court agrees with either argument, it should reverse the in declining to suppress the evidence discovered after Deputy Daley illegally seized Mr. Ockert by pulling him over for violating Kansas' lane law. Because Deputy Daley lacked reasonable suspicion for the stop, the evidence should be suppressed. Mr. Ockert's first momentary touch wasn't enough and a second brief occurred with the officers zooming up behind Mr. Ockert at 1.30 in the morning, going 25 miles an hour over the speed limit on a poorly lit two-lane road without engaging his emergency lights. Well, counsel, let me let me stop you there. Are you arguing basically that an officer, just tell me, understand an officer can't cause a lane deviation? Is that the rule that you're arguing for? No, your honor, we're not arguing that an officer, well, I guess I'm not 100% understanding your question. Under marks, the officer needed a reasonable suspicion that a lane violation had occurred and the momentary drift that occurred the second time occurred with Deputy Daley speeding up behind Mr. Ockert, as I just described. And that's right, and that's what I'm trying to figure out. What role does that play? That the deputy actually caused, I use the word caused, sorry, my torts background, caused the momentary lane, whatever, deviation and therefore that just can't count? I mean, that's what I'm trying to pin you down on. Nothing that categorical because I think marks instructs that that sort of categorical approach to these situations is incorrect. But instead that the officer could not have had reasonable suspicion because of his driving. I don't think you have to conclude that he caused the lane violation to conclude that he could not have had reasonable suspicion under marks. Isn't there a finding from the district court that the officer did not believe that he contributed to the second lane change? There is a finding from the district court that the officer testified that though he told Mr. Ockert that he knew he had drifted over center because he was coming up on him very quick, the officer didn't believe that and he was just trying to control the stop. But I don't believe there's a district court finding that explicitly says that the officer did not believe it. The district court describes both exchanges. Describes his talking to Mr. Ockert and describes what he believed, but you're saying that doesn't count as a finding. It was a descriptive statement of what he believed. Yes, your honor. I believe the district court's finding both describes that the officer told Mr. Ockert that the reason he suspected Mr. Ockert had drifted to the center line was because of his driving. And the district court did describe that the officer said that he didn't believe that, but was instead just trying to maintain control over the traffic stop. And he said that in the context of testimony at the hearing, right? Yes, your honor. Okay, and did the court find that the officer was credible? Not in every instance. The district court didn't find, for instance, the officer was credible when they said that they smell marijuana in the vehicle. And bringing the focus back to marks, the officer's subjective understanding or subjective statements about whether or not he believed that Mr. Ockert had touched a center line because of his driving isn't the correct analysis. And the categorical error that we are objecting to here is that the district court categorically didn't consider the fact that, didn't properly consider the fact that Deputy Daley was speeding at 25 miles an hour over the speed limit without his lights on at the time that Mr. Ockert touched the center line. Well, isn't marks, you say that marks doesn't establish a categorical principle, but isn't it a matter of practicable or something language of that sort in terms of maintaining your lane, right? And so if there were obstacles or something that prevented you from maintaining your lane, you could not, I mean, I'm not going to take the time right now to go back and look at it, but isn't there, that's something to the effect of what's at play there? Yes, your honor. Okay, well, then there's ultimately got to be a determination as to whether that second lane change was something that could have been avoided. And out of that are going to be a number of facts from which you make that determination. If it is undisputed that he did make the lane change, then really you're on the back foot of explaining why it would not have been practicable for you to maintain the lane. And if the officer testifies, well, you know, I don't believe that that would have stopped him from maintaining the lane. And what is there to suggest to the contrary? We're construing the facts in light most favorable to the suppression, you know, determination, right? That's correct, your honor. Okay, and so there's going to have to be some basis to say it was clearly erroneous to say that when he drifted out of that lane, he could not have stayed in his lane. Your honor, under Marks, respectfully, I think that impermissibly shifts the burden to Mr. Ocker to prove that he could have stayed in the lane. When in fact, Marks instructs that to have reasonable suspicion, the officer had to have an understanding as to why it was not practical for Mr. Ocker to stay in the lane. And for the momentary touch, Deputy Daley was four blocks away and offered no testimony as to why or why not it might have been practicable. And then in that context, and he testified at the hearing that he understood that that first lane change could first touch of the center line could not have given him reasonable suspicion of a violation. He didn't engage his emergency lights, but instead sped up on without engaging his lights to 25 miles an hour over the speed limit in violation of Kansas law and department policy. And while he's at 63 miles an hour, then Mr. Ocker briefly touched the center line. This isn't about the deputy, is it? I mean, we're not here indicting the deputy. We're talking about whether there could have been reasonable suspicion to believe he could have avoided the lane change, right? And it's one violation, right? So we're not going to divide the two. If the officer is looking at an individual, knows that there's one, there's one deviation, okay, from the lane, why couldn't he use that in inferring something about the second deviation? Because in Marx itself, there were two lane, there were two touches of the center line, the mobile home in that case, touch the fog line and touch the center line. And in that case, because there wasn't evidence and testimony as to whether or not it was reasonably practicable to stay in the lane, the Kansas Supreme Court instructed that the evidence should be suppressed. And so that's the error that we're complaining of here, which is the court improperly credited the first lane in order to find reasonable suspicion, even though Marx requires more. I'd like to turn to the plain view issue, the search. So even if the officers had reasonable suspicion to stop Mr. Ocker, the district court erred in allowing the warrantless search of Mr. Ocker on his girlfriend's private driveway. Mr. Ocker had pulled into his girlfriend's driveway, he got out of his car, followed the officer's order to stand next to the officer's car, and he was eventually arrested, still standing next to the officer's car. Without a warrant, the officers then illegally searched Mr. Ocker's vehicle in a way that they defined as a plain view search. There is no such thing as a plain view search, and the officers did not meet the plain view of Mr. Ocker's vehicle because they were not lawfully in a position to view the incriminating evidence when they found it. And where below did you challenge the search of the vehicle, along the lines that you're doing now? I didn't find any place where anything like this was done below. And we're not even in the, and if I'm right, we're not in the realm of forfeiture, we're in the realm of waiver. And our precedent is very clear on that. At the record, Volume 1, 156 to 57, which is where we objected to the search, I think the context of our objection occurred with the government arguing that the officers had smelled marijuana. And in this case, the district court found that argument not credible, but still reached the issue that, the argument that I'm making here. So we didn't articulate the argument in the exact same way, but the district court did find that the officers were lawfully in position, and so by How does that relieve you of the responsibility of making an argument? I mean, you have a motion to suppress, which I'm looking at, where I don't see anything in there talking about the search of the vehicle. And did you, so I'm not talking about what the district court did, I'm talking about what you did. I mean, what council did below. I can look at the motion to suppress transfer. Where is it there, anywhere where there is this argument that's made that is directed at the search of the vehicle and the lawfulness of what took place in that search? In the record, we did object to the lawfulness of the search. We objected that the officers did not have the right to search the vehicle. I believe the point Your Honor is making is that we did not object that the vehicle was, or the plain view argument that I just articulated, namely that the vehicle was on private property. But the district court expressly found, reached this issue on, in its opinion, at Volume 1, 177, by concluding that Deputy Daley had lawful right to access the vehicle. And under United States v. Hernandez-Rodriguez, by sua sponte raising the issue, we are allowed to object to it here. And it's particularly appropriate in this context because below, Mr. Ockert objected that the officers could not smell marijuana, and the district court agreed. He agreed that that evidence was incredible, and yet he still concluded that the search was lawful on this basis that we object to now. Go ahead, please. Just counsel, I'm sorry, but you concede that you made no argument below regarding whether the officers were in a proper place to perform a plain view. No, I'm sorry, I misspoke if that's what I said. We concede, I was conceding the specific legal point I had just made about Horton, but we did object that the officers, that the plain view exception did not apply, and that was the reference to 1-156-157. And unless there are further questions, I'd like to reserve the remainder of my time. Thank you. Why don't we start with the preservation issue, Mr. Brown? Thank you, Your Honor. There are two issues that are not preserved, and I'll start with the last one that the court discussed with my colleague, and that is the issue of whether the officers were lawfully on the driveway. This issue is not preserved. The defendant did not make this argument below. The defendant says that because the district court sua sponte raised and resolved the issue, then he is able to now reply to that issue. We think that that argument is rebutted by this court's precedent, that in a case called Tessone, the Empire Marketing Strategies, 942 F3rd 979, pages 991, 92, 10th Circuit 2019, that doctrine applies to forfeited issues, not waived issues. This is a waived issue because he did not raise it. It's raised, it's waived under Rule 12. So that doctrine just does not apply. The doctrine that if a district court sua sponte raises and resolves an issue, applies to forfeited issues, not waived issues, this is waived. Did you cite that case in your brief? I don't remember. Could you give us a 28J on that? Yes, Your Honor. The second reason that this court should not consider that argument is because there is a basis to find that the defendant waived the argument in the record, and I direct the court to Record Volume 1, page 158, lines 2 through 7. And there, the defendant, this is in his, I think, his reply to our motion to suppress, he went through, on lines 2 through 6, he went through the four requirements of plain view. The second requirement, the second listed requirement is the police officer has to be lawfully located in a place from which the item can plainly be seen. And then there were four total. And the first is whether the item is in plain view. Second, whether the police officer is lawfully located in a place. Third is whether the officer has a lawful right of access. And fourth is whether it's immediately apparent. And then the defendant goes through these factors, and then he says the first and fourth elements are lacking here. But he didn't say the second element was lacking here. The second element is the lawfulness of their presence. That goes to that he perceived the issue and relinquished the argument when he said the first and fourth elements are lacking here. So there's a waiver of that issue, or at least an argument for a waiver of that issue. And remind me, what page was that on? Record Volume 1, page 158, lines 2 through 7. So that's the preservation issue as to the unlawfulness. There's another issue that the issue of whether the officer's looking inside the vehicle was actually a search. The defendant did not raise that issue below. And in fact, it was not a search. We argue it was not, but he didn't raise it. So it's waived. That argument is waived as well. So those are the waiver arguments. Now I'd like to go through the legal arguments and start with the stop. Then I'll go to whether the officer's looking in the car was a search and whether their presence on the property was lawful. I'll go to the merits, if I may. On the first issue, the stop, the stop was good under three theories. We gave the court three theories. The court only reached one. The court found the stop was good under 815.22a. And there's a lot of authority to support the reasonableness of a stop based on what the officer saw here. There were two lane breaches fairly close in time. The weather conditions were pretty good. The officer didn't see anything in the road that would prevent a defendant from staying within the lane, at least just at the second breach. And it's important to note that the second breach is actually on video. We can see that, so we don't need to speculate. It shows that the defendant was able to maintain his lane, that there was nothing in the lane. He could have feasibly stayed in the lane. So there was one lane breach that fully complies and provides the reasonable suspicion for the stop. This court has required two lane breaches in the past. I don't think the court has found that one is enough, but we have two here. We cite four cases that this court has found that. The court has a long line of cases saying that two is enough. And that's what the officer thought. Two is enough, because he's a well-trained officer, and he was familiar with, apparently, the requirement that there be two lane breaches. What about the officer running up on the Mr. in causing the second lane breach? Well, the court made a finding. The court specifically addressed that, and we address it on page 22 of our brief. In the district court, the defendant compared that action to the commotion caused in a case called Ochoa. And the defendant's argument was that that caused so much commotion that it caused him to breach his lane. The court made a factual finding that the defendant doesn't really discuss, that the commotion was not enough to cause the lane breach. And I give the record cites on page 22 of my brief. Also, keep in mind that very stop that the court just referred to is on video, so we can see what kind of commotion there was. There's no ambiguity in the record. So we think that was good under 815.22a, under this court's authorities and under Mark's. And at the very least, the district court pointed out, the question is not whether what the officer saw was sufficient to accomplish a violation of the statute, but whether it just has to be sufficient to cause some reasonable suspicion to think there was a violation. The court is very well aware of that, and reasonable suspicion standard is considerably less than a preponderance of the evidence. So there doesn't have to be any exacting testimony in the record, but we do have it on video. Second, we argue that if the court is not clear about the law, in other words, about the requirements of Mark's, which are not altogether completely clear, even if he was mistaken about that, how Mark's interplays with this court's authority, how this court's authority, the two lane breach is under optimal conditions, how this court's authority affects everything in regards to 1522a violation, the officer's mistake was reasonable. And that means there wasn't a Fourth Amendment violation. That's a straight application of the Heinen case. Third, we give another alternative ground for the stop. We argue this in the district court, that the officer had reasonable suspicion to believe that the defendant was driving while impaired. So irrespective of the statutory violation, the officer had a reasonable basis to stop the defendant. We give one, two, three, four, five cases, four cases that stand for the proposition that two swerves, one or two swerves, can support the idea or reasonable suspicion to stop based on driving while impaired. Well, if he didn't have reasonable suspicion, I mean, I know you can argue an alternative, as you've done, but if he didn't have reasonable suspicion to support a stop based upon the lane breach, why would he have a reasonable suspicion to support the stop based upon the impairment? There's separate inquiries. The first inquiry is a statute-based inquiry, and the second inquiry has nothing to do with it. Well, I know that. But, I mean, if you're swerving and there's no obstacle, and you don't have reasonable suspicion to believe that it was practicable to stay in the lane, then why would you have reasonable suspicion to believe that any swerving had anything to do with impairment? Your Honor, we're just saying that from an objectively reasonable standpoint, it provides an alternatively sufficient basis for the stop. And swerving in the lane, whether or not you meet the requirements of an 815.22 violation, can also support a stop for driving while impaired. Whether or not there's reasonable suspicion for an 815.22a violation, that's what this Court's jurisprudence basically says. It's an alternative ground for the stop. That's what we argued in district court, and that's what we're arguing now, and we have five cases to support us. And those cases involve both statutes? I mean, both the statutory ground and the other ground? They don't discuss the case? No. Because the thrust of my question went to the interplay between the two, not that you couldn't have reasonable suspicion that somebody was impaired. Those are two different things. I understand that, Your Honor. Off the top of my head, I can't tell you that, but I can tell you that this Court has found that a reasonable suspicion of driving while impaired is not at issue. So in case if the 1522a statute is not an issue and the Court finds driving while impaired, that tells me that you don't need a 1522a violation to also find a driving while impaired. I get that. All I'm saying is, and I won't pursue it too long, but all I'm saying is that if the objective predicate was not there to satisfy the statutory breach, it's hard to see how the objective predicate would be there to satisfy a driving while impaired. I'm not saying you can't make alternative arguments. I'm not saying you can't have a freestone, I mean, freestanding driving while impaired. I'm just saying, logically, the objective predicate would seem to be the same, swerving out of your lane, right? While there's no impediment. Yes. The objective predicate would be the same. So the same set of facts can provide independent bases for a violation of 1522a and driving while impaired. We're fine. Thank you. I would like to move to issue two, whether the deputy's deliberate manner of looking into the interior of the vehicle from the outside was an unwarded search. The defendant raises this claim for the first time on appeal. Therefore, he has waived it. The defendant states that he has raised it at R, at Record Volume 1, page 157. He is not. That argument is not raised. He never says that the officers looking in the vehicle from the outside to the inside and walking around it several times is a search. In fact, it is not a search. If he had argued that in the district court, we would have made a very vigorous argument that it's not a search. The Supreme Court precedent is on our side. Texas v. Brown says that a defendant, very clearly, it's not even controversial, defendant has no legitimate expectation of privacy shielding that portion of the interior of an automobile which may be viewed from outside the vehicle by either inquisitive passersby or diligent officers. That resolves the claim. No expectation of privacy in the interior portion of the car that could be seen from the outside because there's no expectation of privacy. There's not an infringement on a Fourth Amendment interest. Therefore, there's no search. Counsel, can I just stop you there, though? In terms of, I mean, there's a suggestion here, I think that this, they peered multiple times. They looked and looked and looked and looked. And it does seem that, you know, normally it's like in your typical case, you see it the first time. And here they peered multiple times and in different positions. And I'm wondering what you do with that. What you do with it is this. There's two responses. Number one, it's not a search, so it doesn't matter how many times they peered. He didn't have an expectation of privacy in the interior portion of the car that could have been seen from the outside on the first, second, third, fourth, fifth, or sixth times. Because he didn't have an expectation of privacy in the interior portion that could be seen from the outside under Texas v. Brown, it's not a search. They could have done that 20 times and it wouldn't have made any difference. My second response is this. And I think the court may find this more persuasive. But the district court found that the officers saw the firearm in the vehicle and that that was also lawfully seen under the plain view doctrine. And that was seen on the second trip to the car, not the sixth, the second. So it looks like there were six trips and the officer saw that on the second. So here we have the second trip. He saw the firearm. That was lawfully seized in plain view. And that should satisfy the number of trips issue. Well, to use, to go back to Judge Ide's point about the number of trips, why is it that easy to dismiss the notion that just because Texas v. Brown would say that you have no reasonable expectation of privacy in the interior of the vehicle? This reminds me, and I don't know, recall the name of the case, but we had the precedent of the squeeze where, you know, you had things in the interior, the compartment of a vehicle. I mean, in, I think it was a bus. And in that situation, there's no reasonable expectation of privacy. People will move your luggage around when they're putting their luggage in. But there is an expectation of privacy that people won't manipulate your luggage, that people won't squeeze it. Well, why isn't this the same? Well, because the Supreme Court says it's not. We have Texas v. Brown. There's no way to get around it. Was there any analog in Texas v. Brown to what we're talking about here? That's the point I'm making. There's a limiting principle on rules of law, and why wouldn't this be one? Well, Your Honor, we have, I'm not sure I can really speak to the courts, what this court is asking, without reading that case and showing why it's distinguishable. I would suspect that in that case, there may have been an expectation of privacy at issue, and here there's not. I guess the argument, and I won't pursue it because, yes, I don't even have the case in front of me, but the argument is simply that in certain situations, it is clear you don't have an expectation of privacy. And the example in that case was, you know, as we all travel and put luggage in upper containers, there is no reasonable expectation of privacy anyway that people will not move your luggage around. But the court has held that that is different than law enforcement taking your luggage, manipulating it, and trying to find stuff in it. That was a limiting principle on the idea that you don't have an expectation of privacy. All I'm saying is, so categorically saying, well, there's no expectation of privacy vis-a-vis what's in somebody's car doesn't mean there isn't a limiting principle on it, does it? Yes, it does. We think it does. Okay. And we go with Texas v. Brown. The language is crystal clear. We don't think we can get around it. We're constrained to follow it. That's our response. And your response is just because, even though there is no, the factually analogous situation was not present there, that it categorically covers the situation. We think that Texas v. Brown covers the situation in toto, and we don't need to go to any other single analog. That's what we think. Now, going for the idea that the officer saw it on the second, the gun on the second time, I direct the court to Officer Rexroth, first walked up to the vehicle at 1 minute 32 on the tape, and then at 1 minute 34, he says there's a giant-ass gun in the front seat. By that time, Rexroth and Daly had walked around the vehicle. So there'd been two trips to the vehicle at that time. On the second trip, there was no expectation of privacy in the driveway. None. The defendant argues for the first time, raises this argument for the first time on appeal. It's waived. We can't get to it. He doesn't show that he has an expectation of privacy as a social guest under this court's precedence. He was not a social guest. He doesn't make any single argument that he was a social guest entitled to fourth-member protection on that driveway. That's the only basis that he can claim that he was lawfully there, and he can't do that. You're over time, so we're at the end. Thank you. I appreciate the court's patience. Thank you. Could you tack on 30 seconds for him? You don't have to take it, but you have it if you want it. Thank you, Your Honor. I'd like to start first with Texas v. Brown and the categorical rule that my colleague just advocated for. I think that's incorrect. I think the court's precedent in Coolidge and Collins makes clear that an automobile isn't a talisman. The Fourth Amendment doesn't just disappear because it's an automobile. One way to think about this issue, think if instead of an automobile, the officers had walked up onto private property and shined their light into a bush to find the incriminating evidence. In that circumstance, just walking around it, it would have been obvious that that is not allowed under the Fourth Amendment. There is no reason under the case law to adopt a different approach here simply because it's a vehicle. It wouldn't have been allowable because it would have been in the curtilage. Is that what you're saying? You said bush, right? Yes, Your Honor. I just meant any object that's off into private property in the curtilage. Okay. Yes. I was assuming that the bush was in the curtilage, but you could take any example, firewood, something stacked up where they have to walk around and shine in. In Texas v. Brown, they couldn't see the gun. It was my understanding it was in plain view and they saw the gun. They only saw the gun in plain view because they left where they were by their vehicle, where Mr. Ockert was, and walked onto private property to look into the vehicle. He had pulled into a private driveway. And so at that point, it changed. It's not like an automobile stop around like Texas v. Brown, where the officers are standing next to the car because they pulled them over right there. Here, he had parked into private property and the officer instructed Mr. Ockert to stand by him. So Mr. Ockert's not by the vehicle. They didn't arrest him on anything that would have given them cause to go to the vehicle. I think that Collins and Coolidge made clear that we don't have these sort of bright line rules that you just lose your Fourth Amendment protection because it's a certain, because there's a vehicle involved. I'm sorry. I just, then your objection though is not to the number of times they peered into the car, but rather they shouldn't have been where they were when they peered. Is that correct? That's correct, Your Honor. So really it just boils down whether they were properly on the property at the time, that that is your single argument. It is not a multiple peering argument. No, and I think Roden, we cited a case Roden is directly on point. In that case, the officer searched in a car that was on private property, someone else's private property, but that, and it fell outside of the scope of why they were interacting with the defendant. And in that case, the court properly suppressed the evidence. On the preservation issue, if this court disagrees that, well, I'd like to, Hernandez v. Roden, the case I cited earlier, Hernandez. In an Ohio Court of Appeals decision, Roden. Yes, Your Honor. And what sway in the world is that supposed to have in our resolution of this issue? I mean, we're not bound by it. It's not, you don't give us any prevailing authority on that point. I mean, beyond the fact that you got to deal with a serious problem that your client doesn't have a right to object to, ordinarily anyway, to being on to property that is not his. Roden, so what? Did Roden deal with these kinds of facts? Roden applied the controlling Supreme Court precedent that I discussed earlier to facts that are similar enough to this case that they should inform the decision in this case. It's correct that it's not a Tenth Circuit opinion. Briefly on the seizure, the emphasis has been on the weather conditions and that there wasn't anything in the road. But the error that we're objecting to is the very one that counsel didn't want to discuss, which is that the officer was speeding behind Mr. Ockert at 25 miles an hour. And the court held that it did not affect its determination. And that's the objection we have to the court's reasoning. It did not affect its determination. Well, why isn't that a finding in itself, that it was a non-issue? Because the court improperly separated the weather and road conditions from the most obvious reason that Mr. Ockert might have drifted to the center line. I see I'm out of my time. Thank you, counsel. Thank you both for your arguments. Thank you.